UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DEBORAH SOEHL,

                            Plaintiff,                  **REPORT AND**
                                                       **RECOMMENDATION**
          -against-                                 CV 09-2219 (SJF) (WDW)

DOVER HOSPITALITY SERVICE, INC.,
d/b/a DOVER CATERERS and BUTCH YAMALI,

                            Defendants.
----------------------------------------------------------------X
**WILLIAM D. WALL, United States Magistrate Judge:**

      Before the undersigned, on referral from Judge Feuerstein, is defendant's motion to dismiss the Amended Complaint pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure. *See* Docket Entry ("DE") [18]. Defendant Dover Hospitality Service, Inc. ("Dover") argues that the complaint must be dismissed because plaintiff Deborah Soehl failed to effect valid service upon it within the 120 day service period following her filing of the original complaint. In the alternative, defendant argues that plaintiff's federal discrimination claims are time barred for failure to timely file an administrative complaint, that the court should decline to exercise supplemental jurisdiction over her state law claims, and that her demands for attorneys' fees and a jury trial should be stricken. Plaintiff has opposed the motion, and seeks permission to effect service beyond the 120 day limit. For the reasons set forth herein, it is recommended that plaintiff's motion to serve the Amended Complaint out of time be GRANTED, and that defendant's motion to dismiss be GRANTED.

## BACKGROUND

      When the case was commenced in May 2009, plaintiff Antoinette Soehl appeared pro se. In October 2009, an attorney appeared on Ms. Soehl's behalf and promptly filed an Amended

Complaint. As both parties refer to the allegations in that pleading as the operative complaint, the references in this Report will also be to the Amended Complaint.

Plaintiff Antoinette Soehl was a food service worker for the Suffolk Community College Campus in Selden, New York beginning in 1994. Am. Compl. ¶15, DE [15]. Dover became her employer in September 2005. *Id.* ¶16. In March 2006, Soehl underwent surgery on her left knee and was out on medical leave until September 2006. *Id.* ¶20. Prior to allowing Soehl to return to work, Dover required a letter from her physician stating that she would be able to perform her job functions. *Id.* ¶22. Once the letter was submitted in September 2006, plaintiff returned to work. *Id.* ¶23.

On March 14, 2007, Soehl sent a letter notifying the company that she would be taking a second medical leave to have surgery on her right knee. *Id.* ¶24. Dover claims that they were "dissatisfied with Mrs. Soehl's work performance" and terminated her employment on March 26, 2007. Defs' Mem. at 2, DE [20]. Soehl had her right knee surgery on March 29, 2007. Am. Compl. ¶25.

On or about June 2007, Soehl ended her participation in a grievance procedure with her union. Am. Compl. ¶49. According to defendants, in return for a withdrawal of the grievance, Dover agreed to allow Soehl to return to work under the medical leave provision of the Collective Bargaining Agreement as long as Soehl provided medical evidence that she could still perform the duties of her job. Defs' Mem. at 2-3.

Soehl claims that on or about July 23, 2007, she provided notice to defendant Butch Yamali[1] ("Yamali") of her return in thirty days. Am. Compl. ¶26. In August 2007, she received

---

[1] Dover's President, Isaac Yamali, is named as defendant "Butch Yamali" in the Amended Complaint.

a letter from Dover's health insurance company notifying her that her coverage was cancelled as of March 31, 2007 due to the termination of her employment. *Id.* ¶27. On August 30, 2007 she received a call from David Brijlall, a "business agent," stating that Dover's insurance carrier was requesting a letter from her surgeon stating that she could return to work. *Id.* ¶31. Soehl claims she forwarded the requested information to Dover's insurance carrier on August 31, 2007. *Id.* ¶32. Soehl attempted to return to work on September 4, 2007 and was told by her immediate supervisor, Nick Scelos, that she could not work. *Id.* ¶33. He also told her to contact Yamali or Pete Cramer. *Id.* ¶34. Plaintiff contacted Cramer, who told her that the insurance company was requesting a letter from plaintiff's surgeon. *Id.* ¶¶35, 36. Plaintiff responded that she had already sent that information to Dover's insurance carrier. *Id.* ¶37.

On September 6, 2007, Yamali told Brijlall that he would take Soehl "out of terminated status" if her doctor's official letter met specific criteria. *Id.* ¶41. There is no allegation that Yamali's position was communicated to Soehl. On or about October 16, 2007, plaintiff's physician wrote a letter stating that plaintiff had no work-related restrictions. *Id.* ¶43. On November 7, 2007, plaintiff submitted her doctor's letter and her Report of Operation to Yamali, and notified Brijlall of her production of the medical information. *Id.* ¶44. Plaintiff alleges that Yamali "purposefully and with discriminatory intent did not take plaintiff out of terminated status, despite plaintiff production of all defendants' requested medical information," *id.* ¶46, but does not allege when this took place or how it was communicated to plaintiff. The Amended Complaint does not indicate when or if Soehl returned to work.

Soehl filed her administrative complaints with the Equal Employment Opportunity Commission ("EEOC") and the New York State Department of Human Rights ("NYSDHR") on

3

July 2, 2008 claiming discrimination on the basis of her disability and age.[2] The EEOC issued a right to sue letter dated February 25, 2009. *Id.* ¶¶50, 51. On May 26, 2009, Soehl, appearing pro se, filed this lawsuit alleging discrimination based on her disability under the Americans with Disabilities Act ("ADA") and her age under the Age Discrimination in Employment Act ("ADEA"). *Id.* ¶50.

On September 14, 2009, the plaintiff's daughter, Deborah Soehl, allegedly served the summons and complaint on two different Dover employees. Dover filed and served its answer on September 23, 2009, which included a defense of improper service and lack of personal jurisdiction. On October 5, 2009, attorney Scott Michael Mishkin filed a notice of appearance on Soehl's behalf and two days later, electronically filed a summons and amended complaint. Dover then served its motion to dismiss the Amended Complaint on October 12, 2009. The fully briefed motion was filed on February 4, 2010.

**DISCUSSION**

Defendant's motion seeks an order dismissing the complaint against Dover pursuant to Rule 12 (b)(6) and striking plaintiff's jury demand pursuant to Rule 38(b). Although Dover does not specifically state that it is seeking dismissal pursuant to Rule 12(b)(5), its claim that plaintiff failed to effect service within the 120 day limit rests upon an attack on the sufficiency of service attempted by plaintiff. A finding that the complaint should be dismissed for inadequacy of service would obviate the need for a determination on Rule 12 (b)(6) grounds. Accordingly, "the Court must first address the preliminary questions of service and personal jurisdiction."

---

[2] The Amended Complaint states that the EEOC complaint was filed on or about July 10, 2008, Am. Compl. ¶50, but plaintiff argues that it should be deemed to have been filed on the date the NYSDHR complaint was filed, July 2, 2008. Pl's Mem. at 17. As defendant treats July 2nd as the date the EEOC complaint was filed, *see* Defs' Mem. at 11, the court will do so as well.

4

*Mende v. Milestone Tech., Inc.,* 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (citing *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir. 1963)).

**I. Personal Jurisdiction over Defendant**

Dover challenges plaintiff's September 14, 2009 attempt to serve the complaint upon it. Specifically, Dover claims that leaving one copy of the complaint with a cafeteria worker and a second on a table in the reception area at the corporate office is insufficient service. Plaintiff claims that service was proper because she served two Dover employees who were authorized agents to accept service, and who did accept service.[3] Should the court find that the attempted service was inadequate, however, plaintiff has requested that she be granted permission to serve the complaint beyond the 120 day limit. Dover opposes this request.

Even if the service on September 14, 2009 was insufficient, a finding I do not make at this time, it is my recommendation that plaintiff's request to serve her complaint beyond 120 days be granted. Rule 4(m) provides that if service of a complaint is not made upon a defendant within 120 days of filing, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

Prior to 1993, if a complaint was not served within the 120 days provided in the rule, which was then contained in Rule 4(j), dismissal was mandatory absent a showing of good

---

[3]Plaintiff submitted affidavits of service executed by Deborah Soehl dated October 21, 2009 stating that she served "Kenya Ramirez" and "Brian (last name unknown)" on September 14, 2009. According to Dover, Brian Byington is the only "Brian" employed at the location. On November 5th, 2009 sworn affidavits were filed by Yamali and two Dover employees, Kenia Ramirez and Mr. Byington. The affidavits of Ms. Ramirez and Mr. Byington state that they were not served on that date, and are not authorized agents of Dover. Yamali's affidavit states that he found the summons and complaint on the table in the office reception area.

cause. The Supreme Court, in a case applying Rule 4(j), noted that under Rule 4(m) as revised in 1993, "courts have been accorded discretion to enlarge the 120-day period 'even if there is no good cause shown.'" *Henderson v. U.S.,* 517 U.S. 654, 662-63 (1996) (quoting Advisory Committee's Notes on Fed. R. Civ. P. 4, 28 U.S.C.App., p. 654)). The Second Circuit has also held that "district courts have discretion to grant extensions even in the absence of good cause." *Zapata v. City of New York,* 502 F.3d 192, 196 (2d Cir. 2007). In other words Rule 4(m) provides that, "the Court *must* extend the time to serve if plaintiff has shown good cause, and *may* extend the time to serve even in the absence of good cause." *DeLuca v. AccessIT Group, Inc.,* 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010)(emphasis in original).

When determining whether good cause exists, the court looks to two factors: "(1) whether the plaintiff acted reasonably and diligently in her efforts to serve the defendant; and (2) whether the defendant was prejudiced by the delay in service." *Remice v. Zenk,* 2008 WL 4516246, at *5 (E.D.N.Y. Oct 1, 2008). As to the first factor, plaintiff must demonstrate more than mere mistake or inadvertence. Indeed, "reliance upon a third party or process server to effect service is insufficient to merit a finding of good cause or an extension of time for service." *Lab Crafters, Inc. v. Flow Safe, Inc.*, 233 F.R.D. 282, 285 (E.D.N.Y. 2005). It is not necessary, however, to make a determination as to whether plaintiff has shown good cause entitling her to a mandatory extension of the time to serve since she has satisfied the factors for a discretionary extension.

The following factors should be considered by the court in deciding whether to exercise its discretion to extend the deadline for effecting service: "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in

service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Carroll v. Certified Moving & Storage, Co.,* 2005 WL 1711184, at *2 (E.D.N.Y. July 19, 2005) (*quoting Eastern Refractories Co. v. Forty Eight Insulations, Inc.,* 187 F.R.D. 503, 506 (S.D.N.Y. 1999)).

As to the first factor, "[c]ourts have consistently considered the fact that the statute of limitations has run on plaintiff's claims as a factor favoring the plaintiff in a Rule 4(m) analysis." *Beauvoir v. U.S. Secret Serv.,* 234 F.R.D. 55, 58 (E.D.N.Y. 2006) (citations omitted). "The rationale for this principle is that dismissal under these circumstances would extinguish potentially meritorious claims without there being an opportunity to have them adjudicated on the merits." *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L .P.,* 197 F.R.D. 104, 109-10 (S.D.N.Y. 2000).

Soehl's claims that formed the basis of her complaint to the EEOC would be time-barred if the Amended Complaint is dismissed and she is forced to re-file this action. Under the ADA, a claim must be filed within 90 days of receipt of a right to sue letter from the EEOC. *See Johnson v. St. Barnabas Nursing Home,* 368 F. App'x 246, 248 (2d Cir. 2010); 42 U.S.C. §12117(a). The same limitations period applies to the ADEA claims. *See* 29 U.S.C. §626 (e); *Presser v. Key Food Stores Co-Op., Inc.*, 316 F. App'x 9, 11 (2d Cir. 2009). The 120 day time to effect service is, in effect, a tolling period. If a plaintiff fails to perfect service within that time, the statute of limitations on her claim begins to run again. "'[T]he statute of limitations for the underlying claim is tolled during [Rule 4's 120-day service] period.' But if the plaintiff's action is dismissed for a failure to serve within 120 days, 'the governing statute of limitations again becomes applicable, and the plaintiff must refile prior to [its] termination....'" *Zapata,* 502 F.3d at 194 n. 4 (alterations in original) (quoting *Frasca v. U.S.,* 921 F.2d 450, 453 (2d Cir.

7

1990)).

Soehl's EEOC right to sue letter is dated February 25, 2009. Absent contrary evidence, it is presumed that an EEOC notice is received three days after its mailing. *See Johnson,* 368 F. App'x at 248; *Sherlock v. Montefiore Med. Ctr.,* 84 F.3d 522, 525 (2d Cir. 1996) (citation omitted). Her initial complaint was filed on May 26, 2009, or the 87th day after presumed receipt of the right to sue letter.[4] Thus, she had three days remaining before the 90 days to commence suit expired. The 120-day service period expired on September 23, 2009, and with it, the tolling of the 90-day limitations period. The three days remaining of the 90-day limitations period ran, and on September 28, 2009,[5] her time to commence a new action against defendants expired. Accordingly, if the court declines to exercise its discretion and allow her to re-serve her complaint, those claims underlying the EEOC complaint would be time-barred.

The bulk of authority finds that, absent an extensive delay or lack of diligence on plaintiff's behalf, the fact that the statute of limitations has run weighs in plaintiff's favor. *See Hertzner v. U.S. Postal Serv.,* 2007 WL 869585, at *7 (E.D.N.Y. Mar. 20, 2007); *Beauvoir,* 234 F.R.D. at 58; *Carroll,* 2005 WL 1711184, at *2; *but see Amnay v. Del Labs,* 117 F. Supp. 2d 283 (E.D.N.Y. 2000). I find that the first factor favors plaintiff, especially in light of her effort to timely complete service and the *de minimis* delay between her learning that her first attempt at service may have been defective and her filing of an Amended Complaint.

The second factor, actual notice to the defendants, also weighs in plaintiff's favor. Defendants do not claim that they did not have notice, and Yamali states by affidavit that he

---

[4] Plaintiff indicated in her original complaint that she received the EEOC right to sue letter on February 25, 2009. As plaintiff was proceeding pro se at the time she prepared that document, the court has given her the benefit of the presumed three days for mailing.

[5] The 90th day after tolling would fall on September 26th, a Saturday, and thus the deadline would move to the next business day. Fed. R. Civ. P. 6(a)(1)(C).

found a copy of the summons and complaint on a table in the reception area of the Dover offices in September 2009. Yamali Aff. ¶3, Mtn. Ex. D.

The third factor does not weigh in either party's favor. There is no evidence that Dover attempted to conceal the alleged defect in service. Although it served its answer asserting insufficiency of service on the 120th day after plaintiff filed her complaint, this does not suggest that Dover waited until the last day to let plaintiff know that the service of process was in question since less than two weeks had passed since it found the complaint. There is no evidence before the court that would support a finding that Dover made affirmative efforts to conceal the defective service from plaintiff.

The fourth factor also weighs in plaintiff's favor as Dover has not established any prejudice against it. Defendant suggests that it would be prejudiced by the revival of plaintiff's claims. However, a claim that not allowing a defendant "to take advantage of an expired statute of limitations is itself a form of prejudice . . . is erroneous." *AIG Managed Mkt Neutral Fund,* 197 F.R.D. at 111. Defendant further argues that it will be "forced later to seek summary judgment" should plaintiff be allowed to pursue her claims. Defs' Reply Mem. at 7. This argument also appears to suggest that the prejudice arises from having to defend the case and as such, is rejected.

For the above stated reasons, I recommend that plaintiff's motion to serve her complaint out of time be granted, and that service of the Amended Complaint made on October 7, 2009 be deemed timely, *nunc pro tunc*. In light of this recommendation, I turn to consideration of that portion of defendant's motion that seeks dismissal of the Amended Complaint under Rule 12(b)(6).

## II. Standard for Motion to Dismiss

Rule 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court set forth revised standards under which a complaint may withstand a motion to dismiss pursuant to Rule 12(b)(6), finding that a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." 550 U.S. at 570. The court must still assume that well-pleaded factual allegations set forth in a complaint are true and draw all inferences in favor of the non-moving party, *see, e.g., Holmes v. Poskanzer,* 342 F. App'x 651, 652 (2d Cir. 2009), but those factual allegations must be sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Williams v. Berkshire Fin. Group Inc.*, 491 F. Supp. 2d 320, 324 (E.D.N.Y. 2007) (quoting *Twombly*, 550 U.S. at 545); *see also ATSI Comm., Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007).

Subsequent to *Twombly,* the Supreme Court suggested a two-pronged approach to analyze the sufficiency of a complaint. *See Ashcroft v. Iqbal,* __ U.S. __ , 129 S. Ct. 1937, 1949-50 (2009). First, although for the purposes of a motion to dismiss the court must accept as true the factual allegations in the complaint, it is not "bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949-50. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Second, "a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal,* 129 S. Ct. at 1950). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Iqbal,* 129 S. Ct. at 1949 (internal quotation marks and citations omitted). Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. With these standards in mind, I turn to consideration of the Amended Complaint in this case.

### A. Federal Claims under the ADA and the ADEA

A plaintiff must timely file administrative charges with the EEOC as a condition precedent to bringing a claim in federal court under either the ADA or the ADEA. *Cherry v. City of New York,* 2010 WL 2501040, at * 1 (2d Cir. June 18, 2010) (citations omitted). In New York, a charge with the EEOC must be filed within 300 days of the alleged discrimination. *Id.* The requirement is strictly enforced and "[a] claim is time barred if it is not filed within these time limits." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). The 300-day filing requirement "is not jurisdictional, but, like statutes of limitations, is subject to 'waiver, estoppel, and equitable tolling.'" *Li-Lan Tsai v. Rockefeller Univ.*, 46 F. App'x 657, 658 (2d Cir. 2002) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

Plaintiff's EEOC charge was filed on July 2, 2008 and thus, the discriminatory acts complained of by plaintiff must have occurred no more than 300 days prior, or from September 6, 2007 forward. Any discrete acts of alleged discrimination that occurred prior to September 6, 2007 are time barred.

Based on her papers stating that she is alleging neither retaliation nor termination claims, *see* Pl's Mem. at 19, plaintiff seeks recovery solely on a claim of failure to rehire. As such, the date of this occurrence is significant. Defendant states that plaintiff filed her EEOC charge "302 days after the date Dover refused to rehire her on September 4, 2007." Defs' Mem. at 11. Plaintiff counters with the argument that "defendants refused to rehire on or about November 7,

11

2007, when plaintiff submitted all defendants' requested medical information," Pl's Mem. at 18 (citing Am. Compl. ¶44), a date within 300 days of July 2, 2008. She states that she "does not need to contend that defendants engaged in a continuing violation as to her" because she filed her EEOC complaint within 300 days of the refusal to rehire her on November 7, 2007. *Id.*

Simply put, the argument made by plaintiff in her papers regarding the date of Dover's failure to rehire her is not supported by the allegations in the Amended Complaint. In regards to the date of the alleged failure to rehire, the following salient facts are alleged in the Amended Complaint:

> THIRTY-ONE: On or about August 30, 2007, Plaintiff received a telephone call from David Brijlall ("Brijlall"), a business agent, who advised her t [sic] Dover's insurance carrier was requesting a letterhead statement from plaintiff's surgeon detailing the surgery performed, diagnosis progress, any work restrictions and if plaintiff was able to return to work.
>
> THIRTY-TWO: On or about August 31, 2007, Plaintiff forwarded all requested information to Dover's insurance carrier.
>
> THIRTY-THREE: On or about September 4, 2007, when plaintiff showed up to work at SCCC, Nick Scelos ("Scelos"), plaintiff's immediate supervisor, told plaintiff she could not work.
>
> THIRTY-FOUR: Scelos instructed plaintiff to contact Yamali or Pete Cramer ("Cramer") at Dover.
>
> THIRTY-FIVE: Plaintiff then contacted defendant, and spoke with Cramer.
>
> THIRTY-SIX: Cramer told plaintiff that Dover's insurance carrier was requesting a letterhead statement from plaintiff's surgeon detailing the surgery performed, diagnosis progress, any limitations and if plaintiff was ale to return to work in light of the job description.
>
> THIRTY-SEVEN: Plaintiff responded that she already forwarded all said requested information to Dover's insurance carrier on or about August 31, 2007.
>
> THIRTY-EIGHT: Based on defendants' actions, defendants purposefully and with discriminatory intent kept asking to submit the same information that plaintiff already submitted, despite plaintiff's production of her doctor's notes on

or about August 31, 2007.

. . .

FORTY-ONE: On or about September 6, 2007, Yamali advised Brijlall, that the notes she submitted were not acceptable and stated that he agreed to take plaintiff out of terminated status if her doctor's official letter, explaining the operations she had had over the past two (2) years, recognizing her job duties, and including the doctor's agreement that she could physically handle her duties safely, was received.

. . .

FORTY-THREE: On or about October 16, 2007, in connection to Yamali's request on or about September 6, 2007, Dr. Barry Kleeman ("Dr. Kleeman"), Plaintiff's physician, wrote a letter, to whom it may concern, stating that plaintiff had no work related restrictions.

FORTY-FOUR: On or about November 7, 2007, plaintiff submitted Dr. Kleeman's letter and her Report of Operation to Yamali, and notified Brijlall of her production of all defendants' requested medical information.

FORTY-FIVE: Based on his actions, Yamali purposefully and with discriminatory intent did not take plaintiff out of terminated status, despite plaintiff production of all defendants' requested medical information.

Plaintiff clearly alleges that on September 4, 2007, she was told that she "could not work." Am. Compl. ¶33. She does not, however, allege any action on the part of defendants subsequent to September 4, 2007 that could be construed as a "failure to rehire." Plaintiff claims that she provided medical information on November 7, 2007, *id.* ¶44, and that despite this production, Yamali "did not take plaintiff out of terminated status." *Id.* ¶45. She does not, however, allege *when* Yamali or anyone else at Dover decided not to change her status, or when or how this decision was communicated to her. Indeed, the Amended Complaint never plainly states that Dover failed to rehire her at any specified date except September 4, 2007.[6]

---

[6]The Amended Complaint does state that plaintiff was terminated because of her age and disability in March 2007, *see* ¶¶27-28, but she does not discuss this allegation in opposition to

According to the Amended Complaint, the only act allegedly performed by defendants during the 300-day limitations occurred "[o]n or about September 6, 2007" when Yamali advised *Brijlall* that he would reinstate Soehl if she provided specific documentation. Am. Compl. ¶41. Conspicuous by its absence is any allegation that this statement or any other manifestation of Dover's "reinstatement" position was ever communicated to plaintiff herself.[7] In short, she has not provided a single factual allegation regarding any action taken by defendants of which she was aware that occurred within 300 days of her filing of the EEOC charge.

Defendants also argue that plaintiff's statement in the original complaint that "I wasn't allowed to come back to work" coupled with her recollection that the discriminatory acts occurred on "9/07" constitute a judicial admission that she was refused rehire on September 4, 2007. Defs' Reply Mem. at 12. These two statements taken together do not compel a conclusion that she was asserting September 4th as the actual date she was terminated, and thus I do not find this to be an admission of that fact. The statements are, however, indicative of plaintiff's belief that she was not allowed back to work effective some time in September 2007, not November of that year.

Based on the allegations current Amended Complaint, I recommend that plaintiff's federal claims be dismissed for failure to timely file a charge with the EEOC.

### B. Remaining Claims

A district court may decline to exercise supplemental jurisdiction over state law claims if

---

the motion. Clearly, that discrete employment action took place well beyond the 300-day limitation period.
[7]Plaintiff refers in her opposition papers to a "letter" dated September 6, 2007 as proof that Yamali agreed to take plaintiff out of terminated status if she provided medical documentation. This letter is actually an e-mail from Yamali to Brijlall, and there is no indication in this document that Soehl was made aware of Yamali's statement regarding her status.

it has dismissed all claims over which it had original jurisdiction. 28 U.S.C. §1367 (c)(3). Indeed, "when all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice." *Tops Markets, Inc. v. Quality Markets, Inc.,* 142 F.3d 90, 103 (2d Cir.1998) (citing *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)). Since I recommend dismissal of the federal discrimination claims, I further recommend that the court decline to exercise supplemental jurisdiction over the claims brought pursuant to New York law.

Defendant's motion also seeks to dismiss plaintiff's retaliation and termination claims because of her failure to raise those claims before the EEOC. In light of my recommendation that the Amended Complaint be dismissed, a further recommendation on this claim is unnecessary.[8] Defendants also moved to strike plaintiff's demand for attorneys' fees and her demand for a jury trial. Recommendations on these requests are also unnecessary.

## CONCLUSION

For the reasons stated herein, I recommend that plaintiff's motion to serve her complaint beyond the 120 day period be granted as an exercise of the court's discretion under Rule 4(m), and that the service of the Amended Complaint made on October 7, 2009 be deemed timely *nunc pro tunc*. I further recommend that defendants' motion to dismiss plaintiff's federal claim under the ADA and the ADEA be GRANTED, and that the court decline to exercise supplemental jurisdiction over the state law claims.

---

[8] It is noted, however, that plaintiff has stated that her Amended Complaint does not assert such claims, see Pl's Mem. at 19, and defendants have suggested that as such, those claims are "abandoned." Defs' Reply Mem. at 15.

**OBJECTIONS**

A copy of this Report and Recommendation is being sent to counsel for all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
August 23, 2010

    /s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge